IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2013

**ASHLEY MAI COOK v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Bedford County**
**No. 17373        Robert Crigler, Judge**

**No. M2012-01876-CCA-R3-PC - Filed May 23, 2013**

Petitioner, Ashley Mai Cook, was convicted of first degree murder and conspiracy to commit first degree murder, for which she received consecutive sentences of life in prison and twenty years, respectively. In this petition for post-conviction relief, petitioner alleges that trial counsel rendered ineffective assistance by failing to properly advise her with regard to whether to testify at trial. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Kristen Bargers Green, Shelbyville, Tennessee, for the appellant, Ashley Mai Cook.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Robert Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Facts and Procedural History

Petitioner was convicted by a Bedford County jury of conspiracy to commit first degree premeditated murder, a Class A felony, and first degree premeditated murder. The trial court sentenced her to consecutive sentences of twenty years for conspiracy to commit first degree murder and life imprisonment for first degree murder. Following an unsuccessful direct appeal, *see State v. Ashley Mai Cook*, No. M2009-00136-CCA-R3-CD, 2011 WL 664764 (Tenn. Crim. App. Feb. 24, 2011)*, no perm. app. requested*, petitioner filed a petition

for post-conviction relief. The post-conviction court appointed counsel, who filed an amended petition. Following an evidentiary hearing, the post-conviction court denied relief. This appeal follows.

## A. Facts from Trial

On direct appeal, this court thoroughly reviewed the facts presented at trial. *See Ashley Mai Cook*, 2011 WL 664764, at *1-15. In addressing the sufficiency of the convicting evidence, we summarized the facts as follows:

> The proof clearly supports a finding that [petitioner] conspired to kill the victim[, William Ross,] and that she acted with premeditation during the killing. When viewed in a light most favorable to the State, the record shows that during the weeks leading up to the murder on February 14, 2007, [petitioner] participated in several conversations with Justin Young and Kimberly Ross about killing the victim. A plan was then developed during which [petitioner] would take a cab to the Golden Gallon, walk from the store to the victim's residence, and use a ladder to climb in Mr. Young's bedroom window. [Petitioner] would then be given a gun to shoot the victim while he was in bed asleep. Mr. Young testified that he was supposed to wipe down the gun and place it in the gun cabinet with a clip in it waiting for [petitioner]. Mr. Young and Mrs. Ross were then to be tied up, and they would tell police that two black men broke into the residence looking for Jimmy Whitmire, a former resident. After the shooting, [petitioner] was supposed to leave town in Mrs. Ross' Nissan Versa.
>
> The plan went into action on the evening of February 13, 2007, and continued into the early morning hours of February 14, 2007. The plan was originally supposed to have occurred the previous night, but [petitioner] could not be there. After the victim left for work on the morning of February 13, Mr. Young loaded a .380 pistol with five rounds, wiped it down, and placed it back inside the gun cabinet with one door left slightly ajar. He and Mrs. Ross had several phone conversations with [petitioner] throughout the day to make sure that she was still coming over and to let her know that everything was "ready to go" when she arrived. [Petitioner] indicated that she would be there around 12:00 to 12:30 a.m. Although not part of the plan, [petitioner] called two black men, Rodney Tinnel and Floyd Vinson, and arranged for them to be at her residence at the time of the murder.

At 12:54 a.m., while Mr. Tinnel and Mr. Floyd were still at her trailer, [petitioner] dressed in dark clothing and called for an MTS cab to pick her up and take her to the Golden Gallon. Defendant then left the store without paying her cab fare and walked to the victim's residence. She climbed up the ladder to Mr. Young's window wearing purple latex gloves, and he helped pull her inside. Mr. Young then gave her some money and the keys to Mrs. Ross' Nissan Versa. They walked down the hall to the living room where Mrs. Ross was waiting. Mrs. Ross then took the .380 pistol out of the gun cabinet and showed [petitioner] how to use it. Mrs. Ross chambered a round so that all [petitioner] had to do was "point and shoot." [Petitioner] then tied Mr. Young's hands and feet with bailing twine, and she used a phone cord to tie Mrs. Ross. Mr. Young positioned himself on the floor between the chair and the hallway, and Mrs. Ross [lay] on the couch with her cell phone on the arm of the couch. [Petitioner] walked over to the bedroom where the unarmed victim was sleeping, pushed the door open with her foot, and began shooting. The three fatal shots hit the victim's left forehead, right chest, and left flank above the kidney. [Petitioner] then left as planned in the Nissan. Mrs. Ross called [9-1-1] and when police arrived, she and Mr. Young told them that two black men broke into the residence looking for Jimmy Whitmire and shot the victim. The victim was still alive when police arrived, and at no time did [petitioner], Mr. Young, or Mrs. Ross render aid to him.

After shooting the victim, [petitioner] acted with calmness and in taking [sic] steps to conceal her crime. She tossed the purple gloves out of the car, and she abandoned the car in a church parking lot. [Petitioner] arrived home and hid the .380 pistol underneath her mattress. In her first interview with Agent Wesson, [petitioner] denied any involvement in the murder. She eventually told him about the plan to kill the victim, and she confessed [to] the murder. Although [petitioner] claims that the dominion and control exerted over her by Mrs. Ross negates the element of premeditation, the record does not support this claim. Mr. Young testified that although Mrs. Ross could be persuasive and provided both him and [petitioner] with financial assistance, she did not exert any undue influence over them. [Petitioner] herself testified at one point that Mrs. Ross never "personally" asked [petitioner] to kill the victim, and she never thought that Mrs. Ross was serious about killing the victim.

*Id.* at *17-18.

## B. Facts from Evidentiary Hearing

The post-conviction court held an evidentiary hearing on the petition for relief on July 6, 2012. The State presented three witnesses.[1] Petitioner did not testify on her own behalf or present any witnesses.

Trial Counsel One[2] testified that she had been employed by the District Public Defender's Office for approximately six years. The trial court appointed her to represent petitioner at the general sessions level. She conducted a preliminary hearing, requested discovery from the State, received the discovery, and reviewed it with petitioner. Trial counsel visited with petitioner approximately fourteen to sixteen times between the months of July 2008 and October 2008.

Trial Counsel One testified that petitioner's first trial resulted in a hung jury, eleven to one in favor of guilt. Petitioner did not testify during her first trial. However, she elected to testify during the second trial. Trial Counsel One stated that she discussed petitioner's right to testify with her throughout both trial proceedings and explained to petitioner that it was exclusively her decision as to whether to testify. Trial Counsel One asserted that no one influenced petitioner's decision to testify at the second trial. Trial Counsel One outlined hypothetical situations for each scenario. Trial Counsel One said that she had a good relationship with petitioner.

In discussing the positives and negatives of petitioner's testifying, Trial Counsel One was aware of the two written statements petitioner gave to law enforcement. Trial Counsel One advised petitioner that she would be cross-examined on any inconsistencies in those statements as well as on any prior criminal history. Petitioner discussed her proposed testimony with trial counsel on "many occasions."

Trial Counsel Two testified that he had been employed by the District Public Defender's Office for approximately eleven years. He became involved in petitioner's case at the general sessions level. He reviewed discovery with petitioner "numerous times." Trial Counsel Two met with petitioner several times. He believed he met with petitioner a sufficient number of times to prepare for trial.

---

[1] As noted below, petitioner pursues only one issue in this appeal. Thus, we limit our summary of the witnesses' testimony to the facts pertinent to this sole issue.

[2] Three attorneys from the District Public Defender's Office worked in concert in representing petitioner during trial. Each attorney testified at petitioner's evidentiary hearing. Thus, we will refer to the attorneys individually by number and collectively as "trial counsel."

Trial Counsel Two was not present during the discussion among Trial Counsel One, Trial Counsel Three, and petitioner on the evening before petitioner had to make a final decision as to whether to testify at trial. However, he noted that he and his colleagues typically reviewed the right to testify with their client prior to trial but asked the client to reserve decision until after the State presented its proof. They would also review the client's prior criminal history and the client's version of the case. Trial Counsel Two stated that no one pressured petitioner to testify. He advised petitioner the entire time that the decision to testify was her choice.

Trial Counsel Three testified that he had been an assistant district public defender for twelve to fifteen years in two different judicial districts. He became involved in petitioner's case at the circuit court level but had conferred with Trial Counsel One when the case was in general sessions court. Trial Counsel Three stated that they had requested, received, and reviewed discovery with petitioner. He maintained that his sixteen visits with petitioner were sufficient to allow him to prepare for the case.

Trial Counsel Three discussed petitioner's right to testify with her prior to the first trial. He explained that the decision was hers alone. On the night before petitioner took the stand, he again discussed her rights with her, reviewed the State's proof, outlined the advantages and disadvantages of testifying, and gave petitioner his opinion. However, Trial Counsel Three again emphasized to petitioner that the choice was hers. He stated that petitioner was "well aware of the consequences of her testifying." He emphasized that it was her decision, and she was well-prepared. Trial Counsel Three testified, "She made her decision based on our advice, the proof she heard, [and] knowing that she did not have to testify if she didn't feel comfortable and didn't want to." Trial Counsel Three testified that following the first trial, they interviewed some of the jurors. A few of the jurors told him that they would have liked for petitioner to explain her side of the events. He informed petitioner of the juror interviews.

Petitioner presented no witnesses. Based on this evidence, the post-conviction court denied relief in open court and in a written order dated July 9, 2012.

## II. Analysis

Petitioner raises one issue on appeal: whether trial counsel rendered ineffective assistance by failing to advise her with regard to whether she should testify at trial.[3]

---

[3] Although both the original and amended petitions contain several claims of error, petitioner pursues only one issue on appeal. She also alluded to "the cumulative impact of counsel's errors" but did
(continued...)

## A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2012). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As a mixed question of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007). It follows that if this court holds that either prong is not

---

[3](...continued)
not set forth any facts in support of any error other than the sole issue addressed herein. Thus, all other claims of error raised in the pro se petition or amended petition are considered abandoned on appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("[w]hile the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal").

met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court has previously held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

B. Alleged Failure to Advise Petitioner Regarding Her Decision to Testify

As noted above, the only issue raised in this appeal is whether trial counsel provided ineffective assistance by failing to properly advise petitioner with regard to her decision to testify on her own behalf. However, at the evidentiary hearing, petitioner did not testify or offer an example of either trial counsel's alleged failure or how trial counsel's performance resulted in prejudice to her. Post-conviction proceedings are governed by the Post Conviction Procedure Act of 1995, "which mandates that '[t]he petitioner shall appear and give testimony at the evidentiary hearing if such petition raises substantial questions of fact

as to events in which the petitioner participated' and that '[t]he petitioner shall have the burden of proving the allegations of fact by clear and convincing evidence.'" *John Robert Benson v. State*, No. M2001-02510-CCA-R3-PC, 2002 WL 31777741, at *4 (Tenn. Crim. App. Dec. 12, 2002) (quoting Tenn. Code Ann. § 40-30-210(a), (f)). Petitioner failed to comply with the statutory mandate for seeking post-conviction relief.

Nonetheless, we note that in denying relief, the post-conviction court credited trial counsel's testimony and found "that they discussed at length the pros and cons of whether the Petitioner should testify and that ultimately the Petitioner freely, voluntarily, understandingly, and intelligently decided on her own free will to testify." We will not reassess the post-conviction court's assessment of the credibility of witnesses. *Dellinger*, 279 S.W.3d at 292.

All three members of petitioner's defense team testified about their numerous collective conversations with petitioner about her right to testify and the many factors that were relevant to her decision. They each testified that petitioner was not pressured to testify by anyone. On the record before us, we discern no basis for post-conviction relief. *See John Robert Benson*, 2002 WL 31777741, at *4 (For petitioner to prevail, "we would have to assume that both trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Neither assumption is justified in any way." (citation omitted)). Petitioner has failed to carry her burden of proof.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE